UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

BING YI CHEN,

                Petitioner,

      - v. -                       12 CV 3904  (DAB)
                                           03 CR 734-4 (DAB)
                                         MEMORANDUM AND ORDER

UNITED STATES OF AMERICA,

                Respondent.
------------------------------------X

DEBORAH A. BATTS, United States District Judge.

    Petitioner Bing Yi Chen, also known as Ah Ngai

("Petitioner"), proceeding pro se, petitions to vacate, set

aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

His petition questions the admissibility of evidence presented

at trial, alleges the existence of exculpatory evidence, and

asserts that Constitutional rights were violated, denying him

Due Process under the Fifth Amendment and effective counsel

under the Sixth Amendment.  For the reasons stated below, this

Court finds that Petitioner's claims are unsupported by law

and fact.  Thus, the instant Motion is DENIED and the

conviction and sentence remain in effect.

1

I.        BACKGROUND

In June 2003, Petitioner Bing Yi Chen was arrested on suspicion that he was engaged in a drug conspiracy, during which he participated in the murder of an individual.  In September 2007, the Government indicted Petitioner on two counts of murder while engaged in a drug conspiracy in violation of 21 U.S.C. § 848.  The Government tried Petitioner before a jury in a trial that lasted eleven days from voir dire to verdict, in the course of which it presented evidence that <u>inter alia</u> consisted of items recovered from the crime scene (most notably a firearm and materials used for break-ins), substantial testimony, including from co-conspirators, law enforcement personnel, and members of a narcotics organization, and Petitioner's own post-arrest statements. Petitioner was ultimately found guilty on both charges on October 27, 2007 and, in January 2010, was sentenced by this Court to 420 months for each count to run concurrently.

Shortly after, Petitioner filed an appeal raising a Sixth Amendment claim, specifically whether use of his post-arrest statements violated his Constitutional right to counsel.  In May 2011, the U.S. Court of Appeals for the Second Circuit answered in the negative.  In a Summary Order handed down, the

case was dismissed because Petitioner "was [initially] indicted on July 2, 2003, one month <u>after</u> he was questioned," and, therefore, his right to counsel had not yet attached. <u>United States v. Bing Yi Chen</u>, 433 Fed. Appx. 14, 15 (2d Cir. 2011)(emphasis in original).  In addition, the Court stated, "even if Chen had been indicted at the time he gave the statements, the law in this jurisdiction does not require that an indicted defendant be given notice of the indictment at the time of questioning" as long as he was given his "Miranda warnings [which are] sufficient to make a 'knowing and intelligent' waiver of the sixth amendment right to counsel . . . ." <u>Id.</u> (citing <u>United States v. Charria</u>, 919 F.2d 842, 848 (2d Cir. 1990)).

Petitioner brings the instant suit against the Government, a Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255, claiming that he is being held in violation of the U.S. Constitution and the laws of the United States.  Specifically Petitioner alleges that (1) he was denied Due Process because the Government knowingly introduced falsified evidence; (2) the Court improperly admitted hearsay evidence; (3) evidence shows that he withdrew from the conspiracy; (4) he was denied his Sixth Amendment

right because of ineffective counsel; and (5) he was denied
Due Process because the Government withheld exculpatory
evidence.

II.      DISCUSSION

     A. Procedural Default

     Petitioner's claims are procedurally barred, the
Government argues, because he failed to raise them on direct
review.  "A motion under § 2255 is not a substitute for an
appeal[,]" United States v. Munoz, 143 F.3d 632, 637 (2d Cir.
1998), and "general[ly] a claim may not be presented in a
habeas petition where the petitioner failed to properly raise
the claim on direct review." Reed v. Farley, 512 U.S. 339, 354
(1994).  This bars a petitioner from asserting claims,
constitutional or otherwise, that he failed to raise at trial,
sentencing, or on direct appeal, "unless he can establish both
cause for the procedural default and actual prejudice
resulting therefrom." DeJesus v. United States, 161 F.3d 99,
102 (2d Cir. 1998); Campino v. United States, 968 F.2d 187,
189-90 (2d Cir. 1992) (extending the "cause and prejudice"
procedural default test to constitutional claims raised in a §
2255 motion).  "Cause may be demonstrated with 'a showing that
the factual or legal basis for a claim was not reasonably

4

available to counsel,. . . [or that] the procedural default is
the result of ineffective assistance of counsel.'" Bossett v.
Walker, 41 F.3d 825, 829 (2d Cir. 1994) (quoting Murray v.
Carrier, 477 U.S. 478, 488 (1986)).  Prejudice, furthermore,
"must be 'actual prejudice' from the alleged violations[.]"
Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007)
(quoting Bousley v. United States, 523 U.S. 614, 622 (1998).
Short of this demonstration, Petitioner's claims will only be
considered if he presents facts proving "actual innocence."
Id.

        Petitioner here acknowledges that on direct appeal he
only "challeng[ed] the improper admission of petitioner's
post-arrest statement." Pet. Mot. to Vacate at 2.  Still,
Petitioner claims that the Court (1) denied him Due Process
because the Government knowingly permitted the introduction of
false testimony; (2) improperly admitted hearsay statements
into evidence; (3) ignored evidence indicating his withdrawal
from the conspiracy; and (4) did not consider the Government's
withholding of evidence in violation of the Supreme Court's
decision in Brady v. Maryland, 373 U.S. 83 (1963).  Petitioner
makes a fifth claim, alleging ineffective trial counsel.
Petitioner, however, does not establish cause for his failure

to raise these claims in his direct appeal, and certainly does not provide evidence establishing actual innocence after protracted trial.  He neither asserts that "there has been an intervening change in the law[,]" which "would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal[,]" Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980), nor that "newly discovered evidence" has been presented, which "could not with due diligence have been discovered at or before trial." United States v. Natelli, 553 F.2d 5, 7 (2d Cir. 1977) (citing United States v. Stofsky, 527 F.2d 237, 244 (2d Cir. 1975)).  As previously noted, Petitioner does raise a claim of ineffective counsel, which is addressed in the succeeding section of this opinion, but that claim relates to his allegation that he was convicted over evidence showing his withdrawal from the conspiracy.  Pet. Mot. to Vacate at 3 (stating that counsel, inter alia, "failed to . . . request a withdrawal jury instruction.")  Therefore, four of Petitioner's claims–introduction of false statements, admission of hearsay statements, ignoring evidence of withdrawal, and withholding of evidence–are procedurally barred.

B. Ineffective Assistance of Counsel

    1. Relevant Law

While most claims included in a <u>habeas</u> petition must be raised in a direct appeal, Petitioners have the right to raise a claim of ineffective assistance of counsel either on direct appeal or collateral review. <u>Massaro v. U.S.</u>, 538 U.S. 500 (2003). The Court, concerned that this Circuit's rule pursuant to <u>Billy-Eko</u> would force Petitioners to chose between "rais[ing] the issue before there has been an opportunity to fully develop the factual predicate for the claim," and "rais[ing it] for the first time in a forum not best suited to assess th[e] facts" despite a record's "indication of deficiencies in counsel's performance," <u>id.</u> at 504, provided Petitioners with the choice as to when the Sixth Amendment claim can be brought after conviction. <u>See</u> <u>Massaro</u> abrogating <u>Billy-Eko v. U.S.</u>, 8 F.3d 111 (2d Cir. 1993).

While "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial," the Court must ensure, however, that "the Strickland standard [is] applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to

7

counsel is meant to serve." <u>Harrington v. Richter</u>, 131 S. Ct. 770, 788, 178 L. Ed. 2d 624 (2011) (citing <u>Strickland</u>, 466 U.S. at 689-90). The ruling in <u>Massaro</u> did nothing to change the high burden to prove ineffective assistance of counsel that was established in <u>Strickland v. Washington</u>, but reaffirmed it. <u>See</u> <u>Massaro</u>, 538 U.S. at 505 (citing <u>Strickland v. Washington</u>, 466 U.S. 668 (1984)).  In <u>Strickland</u>, the Supreme Court established a two-part test to determine whether a defense counsel's assistance was ineffective in violation of the Sixth Amendment.  First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness. . . under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 691-92.  And second, the defendant must show that he suffered prejudice as a result of defense counsel's deficient performance. <u>Id.</u> at 689.  Prejudice is established where "there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different." <u>Id.</u> at 694; <u>see also</u> <u>U.S. v. Venturella</u>, 391 F.3d 120, 135 (2d Cir. 2004).

The burden, again, is on the defendant to establish both elements of the ineffective counsel claim, and prevailing on this claim requires that he meet a high burden. <u>Strickland</u>,

8

466 U.S. at 687.  Defense counsel's strategic decisions will not support an ineffective assistance claim as long as they were reasonably made, and "a reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Venturella, 391 F.3d at 134 (quoting U.S. v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004)); see also  U.S. v. Berkovich, 168 F.3d 64, 67 (2d Cir. 1999) (Actions or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel); U.S. v. Smith, 198 F.3d 377, 386 (2d Cir. 1999) (rejecting an ineffective assistance claim where defense counsel's decisions not to offer or challenge certain evidence were tactical).

### 2. Alleged Ineffective Assistance of Trial Counsel

It is established that, despite failing to raise the claim on direct appeal, Petitioner can bring the ineffective counsel claim here.  Even so, Petitioner fails to meet the high burden to show that counsel's advocacy was deficient. Petitioner alleges that counsel (1) made no effort to conduct a pretrial investigation; (2) failed to interview co-conspirators; and, as mentioned in a separate claim, (3) failed to request a jury instruction regarding withdrawal from

the conspiracy. Pet. Mot. to Vacate at 2-3, 43-90.  Petitioner claims that if counsel had pursued further investigation and interview as one of the "strategic lines," counsel would have "develop[ed] a viable defense case." Pet. Mot. to Vacate at 63.  He further argues that, given the admittedly "limited evidence . . . show[ing his] withdrawal from the[ ] murders[,]" defense counsel's failure to seek "jury instructions regarding petitioner's withdrawal " was fatal to his case. Id. at 84.  The Court disagrees with both assertions.

In support of his claim that counsel was constitutionally deficient, Petitioner cites Bell v. Miller, in which defense counsel's advocacy was deemed inadequate by Sixth Amendment standards. Bell v. Miller, 500 F.3d 149, 152 (2d Cir. 2007). Petitioner's case, however, in no way resembles the case cited.  In Bell, counsel had failed to cross-examine the victim, who was the "only prosecution witness who identified [the defendant] as the assailant[,]" about his memory loss, and whether it could have affected his ability to identify the attacker. Bell v. Miller, 500 F.3d 149, 152 (2d Cir. 2007). The absence of this line of questioning was particularly remarkable because the victim did not name the defendant-the

victim's neighbor in a rooming house—at the scene, and initially only offered a generic description of the attacker. Id.  Police reports from the scene had left the perpetrator's identity as "unknown" and "unidentified[,]" and the victim admitted that he did not remember speaking to the officers at the crime scene. Id.  If that were not enough to cast the victim's identification of the perpetrator in doubt, the victim only identified the defendant as the assailant after having lost fifty percent of his blood, awaking from an eleven-day coma, and having been administered significant medication. Id.  Because all of these factors could have caused or impacted the victim's admitted suffering from persistent memory loss, the Court found that counsel's "performance [could not] be fairly attributed to a 'strategic decision' [giving] 'reason to think further investigation would be a waste[,]'" but was deficient for not having entailed an obvious line of questioning of the victim or including evidence of consultation with a medical expert. Id. at 156 (internal quotation omitted).

Petitioner here was convicted after a multi-day trial, replete with witness testimony, oral and written, as well as other evidence.  Defense counsel's trial strategy included

cross-examination of witnesses, which yielded testimony for the jury to consider in its deliberation.  Petitioner merely alleges, without support, that counsel did not conduct an investigation, and thereby failed to demonstrate any merits to the claim. <u>See, e.g.</u> Pet. Mot. to Vacate at 65-66 ("It was unclear how counsel tried to deal with petitioner's pleading to investigate the language barrier. . . if counsels would interview Tsoi before trial, [sic] would lead them to further investigate other witnesses" and "develop a defense case on" those grounds).  The Government correctly points out that "Chen has not offered any evidence as to what his trial counsel did or didn't do in terms of interviewing his co-conspirators," and the record does not provide any indication that counsel's investigation was inadequate. Mem. of Law in Opp. to Mot. to Vacate at 29.  Nor does Petitioner demonstrate that interviewing co-conspirators would have made any difference in the outcome of the case. <u>See, e.g.</u> Pet. Mot. to Vacate at 46 ("Counsels might argue that Tsoi, Ma, Chen, etc. most likely would invoke the 5th Amendment right"); Mem. of Law in Opp. to Mot. to Vacate at 29 (Petitioner "is right in his brief that it is wholly reasonable to conclude that his codefendants would have likely asserted their Fifth Amendment

rights "). Petitioner provides the Court with no reason to believe that, even if co-defendants were to testify at trial, testimony would have exculpated him, rather than further implicating him. In short, Petitioner's arguments that counsel's fact-gathering was insufficient lacks support and, even if his factual allegations were believed, they do not show that the outcome of the case would have been any different. Inevitably, counsel will have to conclude his defense, and it is unreasonable for a defendant to have counsel engage in Sisyphean tasks; instead it is well-accepted that counsel will "draw a line when they have good reason to think further investigation would be a waste." Rompilla v. Beard, 545 U.S. 374, 383 (2005). Without evidence to show poor preparation and execution in this regard, there is nothing to convince the Court in favor of Petitioner's claim, and it would be inappropriate for the Court to disregard the presumption that counsel properly litigated the matter.

Petitioner further attributes his ineffective counsel claim to inadequate jury instructions, arguing that counsel should have seen that the "evidence of petitioner's withdrawal may not be ignored as too weak to notices [sic]." Pet. Mot. to

Vacate at 84.  In support of his claim that counsel improperly
failed to request a withdrawal instruction, Petitioner writes
that the important "controverted issues are various
defendants' connection with [the conspiracy]" and that where
"evidence is ambiguous" counsel should have "focus[ed the]
jury's attention on the issues rather than allow it to decide
on an all-or-nothing basis as to all defendants." Id. (citing
United States v. Borelli, et al., 336 F.2d 376, 384 n.4 (2d
Cir. 1964)).  Petitioner, presumably, is arguing that his acts
should not have been seen as a part of the underlying
conspiracy, and a withdrawal jury instruction in his case
would have disassociated his conduct from the acts of the co-
conspirators that were committed in furtherance of the
conspiracy.  According to the evidence, Petitioner's argument
suggests, he would have been found liable for his illegal
conduct, i.e. the acts related to distributing illegal
narcotics, but those acts, which were independent of the
conspiracy, would not have sustained his conviction as a part
of the larger conspiracy.

    In the case cited, however, defendants convicted in the
conspiracy were parties in a trial that raised legal and
factual issues of much greater complexity than those

underlying the instant motion.  The issues in <u>Borelli</u> dealt
with unique and nuanced findings related to statutes of
limitations and scope of agreements, which might generally
have been more easily decided but for the facts that the
alleged conspiracy took place over the course of a decade (the
statute of limitations was five years), and that some of the
alleged co-conspirators were incarcerated for various stints,
on unrelated charges, during the course of that decade. <u>United
States v. Borelli, et al.</u>, 336 F.2d 376 (2d Cir. 1964).  The
difficulty raised in the conspiracy case Petitioner cites can
be attributed to the existence of multiple defendants, who
potentially found themselves in and out of the conspiracy over
the course of a blurry timeline, during which participation
might have been <u>legally</u> foreclosed due to their physical
absence as a consequence of time spent in prison. <u>Id.</u>  In
<u>Borelli</u>, the Second Circuit was concerned that jury
instructions might have connoted "a considerable over-
simplification" of the law, which may have resulted in
conspiracy charges for a defendant who only was party to
agreements unrelated to those underlying the conspiracy. <u>Id.</u>
at 384.

    Here, a jury convicted Petitioner on clear instructions,

which separated the elements of the charged crimes.  The trial
transcripts show that after summations, attorneys for the
parties partook in a comprehensive and fruitful discussion
with the Court regarding the jury instructions. See Trial Tr.
783:3-793:23.  The discussion was a part of the overall
collaboration that resulted in the ultimate jury charge, part
of which specifically noted that

> "[t]o sustain its burden . . . the government must prove
> . . .[f]irst, that a narcotics conspiracy existed . .
> .[s]econd, that the defendant, Bing Yi Chen, participated
> in the narcotics conspiracy . . . [t]hird, that <u>while
> engaged in such a narcotics conspiracy</u>, defendant Bing Yi
> Chen intended to kill . . . or intended to counsel,
> induce, procure, or cause the killing of an individual .
> . . [f]ourth, that the killings actually resulted from
> this defendant's actions.

Id. at 831:8-20(emphasis added).

The Court further parsed out the substantive matter
underlying Petitioner's claim that a withdrawal instruction
would have changed the outcome, particularly addressing
whether (1) Petitioner <u>actually was a party</u> to the conspiracy;
(2) Petitioner <u>remained in the conspiracy</u> while taking part in
the murders; and (3) there was a <u>nexus between the underlying
conspiracy and the murders</u>, sufficient to meet the specific
element of the charge.  On the first point, the Court said to
the jury "[i]f you are satisfied that a narcotics conspiracy

existed . . . you must next ask yourself who the members of
that conspiracy were . . . whether the defendant was in fact a
member of that conspiracy." Id. at 836:15-19.  One the second,
the Court advised the jury that

> [a] conspiracy, one formed, is presumed to continue until
> either its objective is accomplished, or there is some
> affirmative act of termination by its members.  So, too,
> once a person is found to be a member of a conspiracy, he
> is presumed to continue his member ship . . . until its
> termination, unless it is shown by some affirmative proof
> that he withdrew and disassociated himself from it.

Id. at 840:15-21.  Explaining the third point, the Court
instructed the jury that

> [t]o show that a killing occurred while a defendant was
> engaged in a narcotics conspiracy, the government must
> provide more than simply temporal connection between the
> killing the drug conspiracy.  The government must show
> that a substantive connection existed between the alleged
> conspiracy and the killing at issue, in other words, that
> they were in some way related or connected.  A murder
> committed by a defendant that is wholly unconnected to
> the alleged narcotics conspiracy, or which was simply
> coincidental to it, will not satisfy this element.

Id. at 841:11-20.  Jury instructions in Petitioner's case were
clear and comprehensive to ensure that what was considered was
that "the scope of his agreement [was] determined individually
from what was proved as to him." Borelli, 336 F.2d at 385.
Contrary to Petitioner's claim, his Motion to Vacate does not
demonstrate that the trial jury was focused on anything other
than his crimes vis-a-vis the larger conspiracy, and his

17

arguments cannot sustain that a withdrawal instruction would have changed the outcome of the case.

Also, simply because "a criminal defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible that evidence may be," does not mean that employing such a tactic would always be wise, strategic, or fruitful. United States v. LaMorte, 950 F.2d 80, 84 (2d Cir. 1991) (quoting United States v. Durham, 825 F.2d 716, 718-19 (2d Cir. 1987)).  Counsel may have found that withdrawal instructions would have added little benefit, in light of the clear jury instructions, which parsed out the elements of the crime and what the jury had to find to convict the defendant. In an ineffective counsel claim, moreover, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether counsel deviated from best practices or most common custom." Harrington v. Richter, 131 S. Ct. 770, 788, 178 L. Ed. 2d 624 (2011) (citing Strickland, 466 U.S. at 690).  Petitioner's claim is unpersuasive, lacks support, and, therefore, offers the Court nothing to arrive at the conclusion that counsel's participation in developing jury instruction failed to meet the

required professional norms.  The Court is bound, moreover, by the standard set out by the Supreme Court, which demands that "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 131 S. Ct. 770, 792, 178 L. Ed. 2d 624 (2011).  So here, "while [Petitioner] contends that counsel could have pursued a withdrawal defense, given the substantial evidence that [he] continued to associate with [the gang] members up until his arrest, [the Court is] not persuaded that this defense would have been likely to succeed." Yannotti v. United States, 2012 U.S. App. LEXIS 7616 (2d Cir. 2012).

Petitioner must "[s]urmount[ ] Strickland's high bar[, which] is never an easy task." Padilla v. Kentucky, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284, 297 (2010).  He must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," Strickland, 466 U.S. at 687, which entails a showing of "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  For the aforementioned reasons, Petitioners claims are "[in]sufficient to undermine confidence in the outcome," of his trial and, therefore, inadequate to

support the instant motion. Id.

III.  CONCLUSION

    For the reasons stated in this Opinion, Petitioner's

habeas claims are without support, and the Motion pursuant to

28 U.S.C. § 2255 is DENIED.

So Ordered.


    New York, NY
    February 1, 2013


                              _Deborah a. Batts_
                                Deborah A. Batts
                          United States District Judge